UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON JACOBS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:23-cv-288

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on May 2, 2019, alleging a disability onset date of May 2, 2019. PageID.26. Plaintiff listed nine disabling conditions.[1] PageID.223. Plaintiff completed one year of college and had past employment as a certified nursing assistant (CNA). PageID.62-63, 224-225. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 7, 2022. PageID.26-43. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Plaintiff listed the following conditions: lesion of liver; cholesterol; diabetes Type II; neuropathy; left knee patellofemoral syndrome; blurry vision; chronic nerve pain; degenerative disc disease; and spine issues. PageID.223.

1

### I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of May 2, 2019, and met the insured status requirements of the Social Security Act through March 31, 2022. PageID.28. At the second step, the ALJ found that plaintiff had severe impairments of obesity and osteoarthritis. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.32.

The ALJ decided at the fourth step that:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), but can never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; with no more than frequent exposure to hazards.

PageID.32. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.40.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.41-42. Based on the testimony of vocational expert (VE) Toni McFarland, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as housekeeper cleaner (195,000 jobs, *Dictionary of Occupational Titles* (DOT) code of 323.687-014), cashier (535,000 jobs, DOT code of 211.462-010), and router (31,000 jobs, DOT code of 222.587-038). PageID.41, 62-63. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from May 2, 2019 (the alleged onset date) through April 7, 2022 (the date of the decision). PageID.42-43.

### III.  DISCUSSION

#### A.  Background

Plaintiff's counsel did not include a statement of errors as directed by the Court. *See* Notice (ECF No. 4, PageID.1362).[2]  Plaintiff's brief includes an argument entitled, "The ALJ did not support the step five finding with substantial evidence" followed by pages of arguments (Plaintiff's Brief (ECF No. 7, PageID.1371-1386)) and a second argument entitled, "The ALJ failed to address the evidence contained in Jacobs' objection" (PageID.1386-1388).

In the absence of a statement of errors, the Court construes plaintiff's appeal as consisting of two claims of error.  First, that VE McFarland's testimony given in support of the ALJ's determination at step five was not substantial evidence because she relied solely on SkillTRAN without taking unique steps after using the program.  Second, the ALJ failed to adequately address counsel's objection to McFarland's testimony.

Plaintiff's counsel cross-examined VE McFarland with respect to the vocational evidence.  PageID.67-79.  Initially, the cross-examination addressed her testimony regarding the 195,000 housekeeping cleaner positions.  PageID.67.  Later, McFarland testified that the source of her job numbers for all three positions (housekeeper cleaner, cashier, and router) was the SkillTRAN Job Browser Pro, that this software aggregates data from the Bureau of Labor Statistics, Department of Labor, and that she did not make any unique estimations or erosions to those numbers.  PageID.69. Counsel continued to question McFarland regarding her knowledge of SkillTRAN and how it generated information, as well as other matters related to vocational

---

[2] The Notice provides in pertinent part, "The initial brief shall not exceed 20 pages and must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand.  Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue."  Notice (ECF No. 4, PageID.1362).

evidence. PageID.73-79. The purpose of the cross-examination was "to probe the reliability of the information [McFarland] provided." PageID.78.

After counsel completed the cross-examination, he did not object to VE McFarland's qualifications as a vocational expert. However, he did raise the following objection to the fact that she used SKillTRAN and to the substance of her testimony:

> Okay. I'm going to rest at this point, and, Your Honor, I am going to object to the testimony, not because the witness was not forthcoming. As she said, I'm not discrediting it. I just think the method was unsubstantiated also as it was explained, it's [SkillTRANN] just using OES codes and using equal distribution, but it's the data from the OES codes, so under 004P, it cannot be consistent with the DOT title because the method that she used does not actually erode based on the DOT title. It erodes on SVP characteristics. The source that she cited currently classifies each of these jobs as SVP 3 or higher, so <u>I'm going to object on the use of SkillTRAN to meet the Commissioner's burden at Step 5</u> because as [INAUDIBLE] that was laid out by the Supreme Court explained that, when confronted, a vocational expert can rely on tangible personal experience, and in that case, there was a labor study produced, but it wasn't actually produced, but it was discussed. <u>In this case, the VE's own testimony to you was, she did no unique steps after using the program, and therefore, it fails to meet the burden of Step 5</u>.

PageID.79 (emphasis added).

In his decision, the ALJ addressed both the vocational evidence and counsel's objection to VE McFarland's testimony:

> If claimant had the residual functional capacity to perform the full range of light work, a finding of not disabled would be directed by Medical-Vocational Rule 202.21. However, claimant's ability to perform all or substantially all the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the VE if jobs exist in the national economy for an individual with claimant's age, education, work experience, and residual functional capacity. The VE testified that given all of these factors the individual would be able to perform the requirements of representative light occupations such as housekeeping cleaner positions with approximately 195,000 jobs (DOT #323.687-014); cashier positions with approximately 535,000 jobs (DOT #211.462-010); and router positions with approximately 31,000 jobs (DOT #222.587-038). The VE recognized the relevant region as the national economy.

At the hearing, claimant's representative questioned the VE on her sources and methodology on identifying jobs numbers, particularly for the housekeeping cleaner position. The VE indicated that she used SkillTRAN and Job Browser Pro as well as her own professional experience in classifying the housekeeping cleaner position as a light exertion job. The VE confirmed that SkillTRAN and Job Browser Pro were the source of her job numbers. When the VE asked the representative if he would like her to provide another light and unskilled job at Step 5 as an alternative to the housekeeping cleaner position, the representative responded negatively. At the close of his questioning, the representative objected to the use of SkillTRAN to meet the Commissioner's burden at Step 5.

Post-hearing, claimant's representative submitted a brief iterating his objections to the VE's testimony regarding other jobs available at Step 5. While the representative repeated his objections to the housekeeping cleaner job, he also included references to a parts assembler and mail clerk position and the VE's testimony regarding job numbers for those positions. But the VE did not identify a parts assembler and mail clerk position as other jobs in claimant's case (Exhibit B10E).

The VE has over 30 years of professional knowledge and experience in job placement. Counsel was given an extensive opportunity to question the impartial VE about the sources relied upon and the methodology utilized for identifying the number of available jobs (Hearing Testimony). There is nothing in the regulations that requires a specific methodology be used (20 CFR 404.1566 and 416.966; SSR 004-p). The regulations require only that work exists in the national economy, meaning that it has a significant number of jobs either within the region or in several other regions (20 CFR 404.1566 and 416.966). The Social Security Administration recognizes SkillTRAN as an acceptable electronic version of the Dictionary of Occupational Titles. Moreover, the Dictionary of Occupational Titles has been administratively noticed in the Administration's regulations. *See* 20 CFR 404.1566 and 416.966.

It is also important to note that the regulations specifically allow for use of VE testimony as a source of occupational evidence. See 20 CFR 404.1566 and 416.966; see, also, SSR 00-4p. The regulations do not require that a VE must also be a statistician or that her work product must be made available for the scrutiny of claimant. The VE retained in this matter was deemed qualified at the hearing. Accordingly, this Court finds the VE's job information reliable. (Exhibit B10E).

After a review of the brief, evidence presented, hearing transcripts, and relevant regulations, I deny the representative's objections. Pursuant to SSR 00-4p, the VE's testimony about the jobs identified above is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the VE, I conclude that, considering her age, education, work experience, and residual functional capacity, claimant can make a

successful adjustment to other work that exists in significant numbers in the national economy. A finding of not disabled is therefore appropriate under the framework of the above-cited rule.

PageID.41-42.

### B. ALJ's evaluation of VE McFarland's testimony and response to plaintiff's objection

Plaintiff contends that VE McFarland's testimony given in support of the ALJ's determination at step five was not substantial evidence because she relied solely on SkillTRAN without taking unique steps after using the program. In *Moats v. Commissioner of Social Security*, 42 F.4th 558 (6th Cir. 2022), the Sixth Circuit addressed how an ALJ evaluates VE testimony:

> How should a factfinder go about valuing a vocational expert's testimony? We can derive the answer in part from the Supreme Court's *Biestek* decision. Vocational experts, *Biestek* explained, are "professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." 139 S. Ct. at 1152. The experts provide "current knowledge" about the nature and availability of various jobs based on publicly available data as well as the experts' own experience in job placement or career counseling. *Id*. at 1152-53 (citation omitted). ALJs will often rely on vocational experts to determine what kind of work (if any) a claimant could perform. *See id.*; 20 C.F.R. §§ 404.1566(e), 416.966(e). And, as *Biestek* suggests, when a qualified vocational expert testifies that a person with the claimant's work experience and physical limitations could perform a significant number of jobs available in the national economy, the ALJ has a solid basis for denying disability benefits. *See Biestek*, 139 S. Ct. at 1155-57 (holding that a vocational expert's testimony identifying a significant number of sedentary jobs the claimant could perform was substantial evidence supporting the denial of benefits); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004); *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Especially so, we note, when the vocational expert is well-credentialed and "has a history of giving sound testimony about job availability in similar cases." *Biestek*, 139 S. Ct. at 1155.

*Moats*, 42 F.4th at 562. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

As an initial matter, plaintiff's objection to VE McFarland's use of SKillTRAN to obtain job numbers at step 5 is without merit. In his decision, the ALJ affirmed that "[t]he Social

8

Security Administration recognizes SkillTRAN as an acceptable electronic version of the Dictionary of Occupational Titles." PageID.42.  In this regard, the Social Security Administration lists Job Browser Pro as one of three searchable databases developed by SkillTRAN for the DOT stating that, "Adjudicators may use these tools to help make an assessment at step four (see 20 CFR 404.1560(b)(2) and 416.960(b)(2)) or step five (see 20 CFR 404.1566(d), 404.1568(d)(2), 416.966(d), and 416.968(d)(2)) of the sequential evaluation process."  *See* EM-21065 REV ("Guidelines for Using Occupational Information in Electronic Tools") (eff. Dec. 5, 2023).[3]

In addition, defendant points out that SkillTRAN's software is widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy.  *See Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018); Defendant's Brief (ECF No. 11, PageID.1399). As the court explained in *Purdy*,

> SkillTRAN's software has been recognized by at least one district court to be widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy. *See, e.g., Wood v. Berryhill*, No. 17 Civ. 5430, 2017 WL 6419313, at *3 (W.D. Wash. Nov. 17, 2017) (describing Job Browser Pro as "the commonly accepted software used by . . . vocational experts").  The software takes as its starting point the <u>Dictionary of Occupational Titles</u> (the DOT), a Department of Labor publication that identifies thousands of jobs by name and describes the skills and capacity for physical exertion required to perform each. The DOT "just defines jobs," however; "[i]t does not report how many such jobs are available in the economy." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012) (per curiam).  And while the Government collects job data, it does so at an aggregated group level, rather than by DOT occupation, which renders estimating the number of jobs available in the economy for a given DOT occupation no easy task. SkillTRAN's software attempts to address that shortcoming through its interpretation of the available data.

*Purdy*, 887 F.3d at 14-15.  Finally, VE McFarland testified that she relies on SkillTRAN "like a lot of other VEs" and that "it's a widely recognized source for job numbers."  PageID.76.

---

[3] *See* https://secure.ssa.gov/apps10/reference.nsf/links/10292021113305AM .

Next, plaintiff contends that VE McFarland's testimony is unsubstantiated because she did not take unique steps to adjust the numbers after reviewing the SkillTRAN information. The ALJ's decision adequately addressed these issues which were set forth in plaintiff's objection.

As discussed, plaintiff's objection did not challenge McFarland's qualifications as a vocational expert. The ALJ found that VE McFarland had "over 30 years of professional knowledge and experience in job placement" and that she "was deemed qualified at the hearing." PageID.42. During the hearing, McFarland testified that she has been working with the Social Security Administration for about 13 years. PageID.72. In addition, McFarland's professional qualifications include an M.A. in Rehabilitation Counseling with the following licenses and certificates: Certified Rehabilitation Counselor; Licensed Professional Counselor; Clinically Certified Forensic Counselor; Certified Advanced Addiction Counselor; and Internationally Certified Advanced Alcohol & Drug Counselor. PageID.264. Having determined that McFarland had the credentials to act as a vocational expert, her testimony was sufficient to provide substantial evidence to support the ALJ's determination at step five. *See* PageID.41-42, 62-64; *Moats*, 42 F.4th at 562 (citing *Biestek*, 139 S. Ct. at 1155-57); *Bayliss*, 427 F.3d at 1218.

Next, as to the substance of VE McFarland's testimony, the ALJ found that the job information she provided was both reliable and consistent with the information contained in the DOT. PageID.41-42. In identifying jobs at step five, McFarland used SkillTRAN, identified the jobs with reference to the DOT code numbers, and factored in her personal experience and expertise. For example, McFarland testified that she has seen the housekeeping cleaner position performed in the last couple of years, and that she has "read different articles about how this job is being performed currently." PageID.67-69. The ALJ pointed out that the regulations do not require that a VE must also be a statistician or that her work product must be made available to the

claimant. PageID.42. In this regard, the Supreme Court has declined to create a "categorical rule" that a VE must produce the data which supports her opinions. *See Biestek*, 139 S. Ct. at 1157. In addressing a VE's testimony,

> The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close.

*Id*. (internal citation omitted).

Finally, as discussed, *supra*, McFarland provided the DOT code numbers with the three jobs she identified (housekeeper cleaner, cashier, and router). *See O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 317 (6th Cir. 2020) ("the DOT data can establish the existence of jobs in the national economy in significant numbers").

Based on this record, VE McFarland presented significantly more than "a mere scintilla" of vocational evidence at step 5. Accordingly, plaintiff's claim of error should be denied.

### C. Plaintiff's objection at the administrative hearing

Finally, plaintiff contends that the ALJ erred by failing to adequately address her objection to VE McFarland's testimony. PageID.79. The Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-6-74 ("Testimony of a Vocational Expert"), 1993 WL 751902 states that:

> All VE testimony must be on the record. After administering the oath or affirmation, the ALJ must (on the record): . . . Rule on any objection(s). The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision.

HALLEX § I-2-6-74(B). Here, the ALJ chose to address plaintiff's objection in his decision. PageID.41-42. For the reasons as set forth in §§ III.A. and B., *supra*, the ALJ's decision adequately addressed the objection. Accordingly, plaintiff's claim of error should be denied.

## IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: February 23, 2024

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).